[No. 26558. Department Two. September 15, 1937.]

S. J. Buob, *Appellant,* v. Feenaughty Machinery Company, *Respondent.*[1]

[1]Reported in 71 P. (2d) 559.

478

*Graves, Kizer & Graves,* for appellant.

*Tustin & Chandler,* for respondent.

BEALS, J.—Defendant, Feenaughty Machinery Company, is a foreign corporation, dealing in farm machinery, authorized to do business within the state of Washington. Plaintiff instituted this action for the purpose of recovering damages sustained by reason of his purchase from defendant of a tractor, at a price of nearly four thousand dollars, which plaintiff in his complaint alleged was seriously defective, and which plaintiff was induced to purchase from defendant by representations made by defendant's officers and agents, which plaintiff alleges were false and made with fraudulent intent to deceive him. Plaintiff also alleged that the written contract for the purchase of the tractor contained warranties, and asked damages for breaches thereof. The defendant denied all liability, and counterclaimed for the unpaid portion of the purchase price.

The action was tried to the court sitting without a jury and resulted in a judgment in plaintiff's favor, first, for $2,250 on account of damages; second, for $250, or, at plaintiff's election, for the return of the tractor, which was in defendant's possession; and

third, for plaintiff's costs. As a credit on this judgment, defendant was allowed $2,091.53, principal and interest of two promissory notes executed by plaintiff in defendant's favor, on account of the purchase price of the tractor; second, for certain witness fees and mileage; and third, for $150, as attorney's fees on the notes above referred to. The net judgment ran in plaintiff's favor in the amount of $258.47. From this judgment, plaintiff has appealed.

The very complicated facts of this case may be briefly stated as follows: During the month of July, 1930, appellant, by written contract, agreed to purchase from respondent a Bates Model 45 crawler tractor. The written contract warranted the tractor to be "of good material, well made, and with proper management capable of doing the work for which it was designed and built," and respondent's agents orally represented to appellant that the tractor had been used for demonstration purposes only, for which reason the purchase price was one hundred dollars less than that of a new tractor. In its oral opinion at the close of the case, the trial court stated that the evidence strongly preponderated in favor of appellant's contention that the tractor was structurally defective, in that it frequently slipped out of gear into neutral, and that respondent's agents falsely represented to appellant that the tractor had been used only for purposes of demonstration, whereas in fact it had been sold to a customer, used for several weeks, and returned as defective.

We agree with the trial court that the evidence clearly preponderates in appellant's favor on these two points. The tractor would work fairly well on level ground, but would slip out of gear in negotiating an up-grade. This was a dangerous as well as an inconvenient condition. Respondent's agents repeatedly

endeavored to remedy the defect by the use of springs, but notwithstanding all attempts to remedy the fault, the gears continued to slip. Naturally, the maladjustment resulted in excessive wear and tear on the machine, and its performance became more and more unsatisfactory.

T. A. Batterton, called as a witness for appellant, testified that, during the spring of 1930, he and his father had purchased from respondent the identical tractor later sold to appellant, and that they had used the same on their farm for six weeks or two months; that the tractor would not stay in gear, did not have the power it had been represented to have, and was generally unsatisfactory; that the witness returned the tractor to respondent's agent, telling him that the witness was through with it. Notwithstanding this history, respondent's agents represented to appellant that the tractor had been used only for demonstration purposes, and was practically a new machine.

After many attempts by respondent's agents to remedy the structural defects in the tractor and place it in condition to perform a reasonable amount of work, none of which had resulted in any substantial measure of success, appellant, during the spring of 1932, again demanded of respondent that something be done. At this time, appellant had paid respondent a considerable portion of the purchase price of the tractor, owing a balance of approximately $1,900, evidenced by his promissory notes. These notes respondent had assigned, and the assignee was demanding payment. Manifestly, appellant had just cause of complaint, as the time and again repeated efforts of respondent's employees to place the tractor in condition to render reasonably satisfactory performance had been futile. Respondent then assured appellant that the tractor would be repaired and put in good

condition in season for the spring plowing, and that appellant's notes would be reassigned to respondent.

After this interview, respondent's employees again worked on the tractor, remedying some injuries which had resulted from their own carelessness during previous work, and apparently placed the machine in working order. Respondent also procured the reassignment to it of appellant's notes, at a cost of fifty dollars. March 5, 1932, appellant executed new notes, secured by a mortgage upon the tractor, covering the unpaid balance of the purchase price, and shortly thereafter commenced to use the tractor in his spring plowing. It was then discovered that the tractor continued its habit of snapping out of gear, and upon being informed of this, respondent's Spokane manager, after consultation with his mechanic who had worked on the tractor, agreed that the tractor's pinions must have slipped out of alignment, which condition could be remedied only at the factory.

In this connection, it should be noted that it appears from the evidence that, at this time, respondent discovered that several tractors similar to the one in question had been shipped back to the factory as defective.

A Mr. Kingston, an officer of respondent on duty in its Portland office, then came to Spokane to discuss the matter with appellant. Appellant testified that Mr. Kingston informed him that, a year or so previously, they had sold a tractor of a later model than the one purchased by appellant, and that the purchaser had died, after using the tractor only thirty days; that the tractor had been turned back to respondent, had been used only thirty days, and was in first class condition. Appellant accepted respondent's offer to exchange his old tractor for the one described

by Mr. Kingston, which later, during the month of June, 1932, was delivered to appellant.

It appears from cross-examination of a witness called by respondent that the history of the second tractor, as appellant testified the same was given him by respondent's agents, was entirely false. This witness, one F. J. Aldrich, testified that he had used the tractor for four months; that he had then lost the lease covering the land on which he was using the tractor, was unable to pay for the machine, and that respondent had agreed to accept return thereof. The witness also testified that, while the tractor was in his possession, it had been seriously damaged by someone who placed emery dust in its machinery as an act of sabotage. It appears that, while Aldrich was using the tractor, the emery dust had caused the machinery to become so hot that the pistons had adhered to the cylinder walls, and that it was in this condition when returned to respondent. It was necessary to rebore the cylinder block and smooth and refit the crank shaft.

An employee of respondent who had charge of the repair of this tractor admitted that this work had been done instead of replacing the parts, as was the usual custom in such cases. This witness also admitted that the emery dust had seriously damaged the motor, but that he had replaced only those parts which had been completely ruined, and had used those which, in his opinion, were still able to stand a reasonable amount of wear.

The evidence shows that the reboring of a block reduces the life thereof by one-half, and that the smoothing and refitting of a crank shaft seldom, if ever, produces good results. Manifestly, the second tractor was a badly worn machine, and one that could not be expected to function satisfactorily. It also ap-

pears that this tractor was the same model as that first delivered to appellant, and that it had remained in respondent's warehouse for well over a year after Mr. Aldrich had returned it. During this time, respondent had taken from the tractor its front axle, and put in its place another axle which had been broken and welded.

Appellant delivered the first tractor to a truck driver, who took it to Portland, bringing back to appellant on the return trip the second tractor. Upon examination of the second tractor, it was found that it utterly failed to measure up to the representations made to appellant by respondent's officers, and appellant rejected it, whereupon this action was instituted.

The trial court ruled that the accord of March 5, 1932, when appellant executed the new notes, prevented any recovery on his part on account of damages suffered prior to that date. Error is assigned upon this ruling, and upon the court's refusal to hold that the subsequent exchange of tractors had the effect of reopening the settlement, and leaving the matter open for the award of any damages which appellant showed he had suffered. Error is also assigned upon the ruling of the court awarding respondent judgment against appellant upon his notes, and upon the ruling that respondent's acceptance of the return and retention of the first tractor did not in law amount to a satisfaction of the notes which appellant executed March 5, 1932. Appellant also contends that the trial court erred in ruling that he was bound by his testimony as to the value of the first tractor at the time of the exchange in June, 1932; in refusing to allow him to amend his complaint to conform, as appellant contends, to proof that the first tractor was worth more than $250; and in refusing to award appellant more than $250 for deprivation of this tractor.

As above stated, the trial court was of the opinion that the first tractor was defective, and that appellant's complaints thereof were well founded. The court was also of the opinion that appellant was justified in refusing to accept the second tractor. We are in accord with these opinions of the trial court. The evidence clearly indicates that respondent's agents grossly misrepresented both machines as to condition and previous use.

The court, however, was of the opinion that, by the agreement of March, 1932, and the execution of new notes, appellant waived any damages which he had suffered up to that time because of the defective performance of the first tractor. In its oral decision at the conclusion of the evidence, the court expressed doubt as to the finality of the March agreement and the effect of the delivery of the second tractor. The court said:

"I am impressed that if there had been a definite and final agreement between the parties, that that [the sending of the second tractor] reopened the transaction. It may be that that is not true."

Later, after the filing of briefs, the court filed its written memorandum decision, holding that respondent's agreement to again attempt to put the first tractor in proper condition for use, and to extend appellant's time for payment of his notes, amounted to a full and complete compromise and settlement of all differences and controversies then existing between the parties, and that the arrangement for the exchange of tractors must be regarded as a new contract.

The question is one of considerable difficulty, but on this phase of the case we disagree with the conclusion of the trial court.

The Restatement of the Law of Contracts, chapter

13, § 417, comment *a* (p. 785), states the rule as follows:

"An accord is a contract (not merely a revocable offer nor a bargain invalid for lack of sufficient consideration or any other reason) between creditor and debtor for the settlement of the claim by some performance other than that which is due. Almost always the contract is bilateral, the debtor promising to render performance, as well as the creditor promising to receive it, but a unilateral contract of accord is possible. Satisfaction takes place when the accord is performed. If the accord is not performed, the creditor's duty thereunder is discharged, and he may enforce his original claim, or, at his election, damages for breach of the accord. There may or may not have been a dispute between the parties as to the validity of the claim to which the accord relates and the accord may have been either an agreement by way of compromise of a dispute or may have been an agreement to substitute a different performance, although no dispute existed in regard to the original claim."

In the case at bar, each of the parties occupied the position of a creditor or claimant. Respondent claimed the balance of the purchase price, and appellant claimed damages. Paragraph (d), § 417, of the Restatement (p. 785), reads as follows:

"If the creditor breaks such a contract, the debtor's original duty is not discharged. The debtor acquires a right of action for damages for the breach, and if specific enforcement of that contract is practicable, he acquires an alternative right to the specific enforcement thereof. If the contract is enforced specifically, his original duty is discharged."

At the time of the March, 1932, conversations, appellant had tried patiently and apparently conscientiously to use the tractor, and respondent had repeatedly endeavored to put it in condition to render the service for which it was constructed. All respondent's attempts to accomplish this end had resulted in

failure. It is not reasonable to suppose that appellant would waive all claim for his accrued damages merely in consideration of respondent's promise to make another attempt to place the tractor in condition to function, and in consideration of some extension of time for the payment of the balance of the purchase price. If the agreement did include any such waiver on the part of appellant, such agreement must clearly appear from the evidence. We are convinced that, at this time, no final settlement of the rights of the parties was made, and that the "accord" agreed upon was not followed by any "satisfaction." The entire relation of the parties, then, must be considered as a whole and still open for adjustment and settlement.

In support of the trial court's ruling, respondent cites several authorities, which we shall now discuss: In the case of *Keylon v. Inch,* 178 Wash. 522, 35 P. (2d) 73, an action for damages based on fraud and deceit, this court held that the evidence showed that a party claiming damages had effected a settlement with the opposing party with full knowledge of the facts, and that the settlement was binding and waived subsequent action for damages. The parties having made a complete, accomplished settlement, with full knowledge of the situation, it was properly held that they were bound thereby.

In the later case of *Bonded Adjustment Co. v. Anderson,* 186 Wash. 226, 57 P. (2d) 1046, it was held that the purchaser of a tractor had waived his right of action for fraudulent representation or breach of warranty, he having, after discovery of the fraud, requested and received an extension of time for payment of the purchase price, and made further payments pursuant to this agreement. In the course of *its opinion,* this court said:

"It is fairly inferable from the allegations of the amended answer and cross-complaint that the appel-

lants had knowledge of the alleged fraud in August, 1930; but, in any event, it is admitted that they had full knowledge in June and August of 1931. Notwithstanding this, they made a new arrangement for credit in September, 1930, under which they secured an extension of time for payment of part of the first installment of the purchase price. Again, on March 12, 1932, after their default on the final installment, as well as on the note given for part of the first installment, they made another arrangement for further time and the giving of two new notes to cover the whole of the debt due upon the tractor."

It appears that the seller had denied responsibility, and that the purchaser had made adjustments in the tractor at his own expense. It does not appear that the vendor entered into any executory agreement to attempt to remedy defects in the machine. This court, citing *Keylon v. Inch, supra,* concluded that the case came within the principle:

"When a party claiming to have been defrauded enters, after discovery of the fraud, into new arrangements or engagements concerning the subject matter of the contract to which the fraud applies, he is deemed to have waived any claim for damages on account of the fraud."

In the case at bar, the notes which appellant had given were in the hands of a third party, who was demanding payment. Respondent agreed to have these notes reassigned to it, which it did. The matter of the notes could not wait; something had to be done immediately to protect appellant against the claim of the holder. In the absence of any agreement on the part of respondent to again attempt to make the tractor function, an entirely different situation would have been presented, but in consideration of the renewed agreement on respondent's part to the effect that it would make the tractor do its work properly, as we view the evidence, it shows no more than a willing-

ness on the part of appellant to grant yet further time to respondent to make good its original agreement, to the effect that the tractor would do the work it was intended to perform.

Respondent cites other authorities to the effect that when a party to a contract has full knowledge of facts which he deems fraudulent as to him, and thereafter performs acts which amount to a ratification of the original contract, or a waiver of the acts of which in his opinion he has ground to complain, he is barred from subsequently maintaining an action for fraud. With this rule, we are in hearty accord, but here the agreement which the parties made by way of an accord included an agreement on respondent's part to again attempt to make the tractor function. This attempt, like all the others, completely failed, and no satisfaction of the accord was ever accomplished.

At the time respondent procured a reassignment of appellant's notes, it paid to its assignee fifty dollars, and respondent contends that, as appellant did not offer to return this fifty dollars, nor reinstate the old notes, he is bound by the agreement. This might well be true, if the matter of the notes had been the entire subject matter of the accord. As we hold that the accord never became finally effective, this matter is open for consideration in connection with all the matters to be decided. We hold that the trial court erred in holding that the agreement of March 5, 1932, was an executed, and not an executory, agreement. Our conclusion on this phase of the case is supported by the following authorities:

In the early case of *Rogers v. Spokane*, 9 Wash. 168, 37 Pac. 300, this court, discussing an alleged accord and satisfaction, held that there was no satisfaction, *because* the agreement or accord had never been executed. In the course of its opinion, this court said:

"There is another and more modern and probably better application of this principle, which has been sustained by the courts, viz., that an accord and satisfaction is the substitution of another agreement between the parties in satisfaction of the former one; or probably a better definition would be where a promise to do a thing is set up in satisfaction of the prior right or claim. And this principle, or application of the principle, is invoked by the appellant here to sustain his appeal. It asserts that it does not plead or attempt to plead accord and satisfaction, nor does it contend that the proof was sufficient to support accord and satisfaction; but its contention is that the matter pleaded, if true, is good as a release of the original cause of action and a good defense to this action, based as it is upon the original case after once agreeing to settle the same; that where there is a disputed liability and an unliquidated claim based thereon existing between the parties, and the parties get together and as a compromise of the matter in dispute agree upon an amount to be paid by the one party to the other, when the amount is fixed and determined and there is an agreement in the two minds that the amount fixed to be paid is the amount due, and the party by the compromise liable to pay agrees to pay the same and the other agrees to accept the same, the payment of the amount so fixed becomes immediately the only matter open between them, and all claims and demands in dispute become immediately merged in the fixed sum, and both parties to the settlement and compromise are mutually bound by the settlement. We think this is a proper statement of the law, with this qualification, that it must appear that it was the new agreement to perform, which the party who was entitled to recover relied upon, instead of the performance of the agreement by the payee."

The court held that the defendant's answer did not state a defense, in that it failed to allege that the plaintiff had "agreed to accept the agreement" to pay, but did allege that he agreed to accept payment. No payment having been pleaded, it was held that there had been no satisfaction.

In the case of *Frankfurt-Barnett Co. v. William Prym Co.*, 237 Fed. 21, L. R. A. 1918A, 602, the circuit court of appeals for the second circuit, in reversing a decree of the district court, said:

"The defendant in its answer declares that the September agreement was in full settlement, accord, and satisfaction of any and all contracts and disputes then existing between the parties. An accord and satisfaction is, of course, a good plea in actions upon simple contracts. But an accord is not a bar to an action on the original obligation unless it has been followed by satisfaction. The general rule is that to amount to a bar the accord must be fully performed, unless the agreement or promise, instead of the performance thereof has been accepted in satisfaction. 1 Corpus Juris, 530, 531. The creditor derives no satisfaction from the promise without the performance. If it is claimed that the creditor intended to accept the promise as a satisfaction and not the performance, then that intention must be clearly shown. *Henderson v. McRae,* 148 Mich. 324, 111 N. W. 1057; *Overton v. Conner,* 50 Tex. 113. 'Accord,' says Sir William Blackstone (3 Bl. Com. 15), 'is a satisfaction agreed upon between the party injured and the injuring, which, when performed, is a bar to all actions upon this account.' In *Paytoe's Case,* 9 Co. 79, it is said:

" 'And every accord ought to be full, perfect and complete; for, if divers things are to be done and performed by the accord, the performance of part is not sufficient, but all ought to be performed.'

"And Chitty on Contracts (16th Ed.) p. 798, states, 'The general rule is that accord without satisfaction is no bar.' He reiterates the statement on page 801 saying:

" 'Every accord ought to be full, perfect, and complete; for, if divers things are to be performed by the accord, performance of part is not sufficient; or, if a thing is to be performed at a day to come, tender of refusal is not sufficient without actual satisfaction and acceptance.'

"And see *Kromer v. Heim,* 75 N. Y. 574, 31 Am. Rep. 491. In *Goodrich v. Stanley,* 24 Conn. 613, 622, the court after examining the authorities lays it down that the mere circumstance that there was an accord with mutual promises does not have the effect of extinguishing the original obligation. It adds that:

" 'Where it is claimed that it is so extinguished, it ought most explicitly to appear that such was the intention of the parties.' "

The same court, in the case of *Wyatt v. New York etc. Co.,* 45 F. (2d) 705, said:

"Ordinarily an executory contract constituting an accord is not a bar to an action upon the original claim; 'satisfaction,' that is, full performance of the contract of accord, is also necessary. If the parties so intend, the contract of accord may itself be taken as a satisfaction and discharge of the original claim; but the intention must be clear, and the presumption is otherwise. See *Frankfurt-Barnett Co. v. William Prym Co.,* 237 F. 21, 27 (C. C. A. 2); Williston Contracts, §§ 1846, 1847."

In the case of *Emerson-Brantingham Implement Co. v. Miller,* 91 Colo. 94, 12 P. (2d) 341, the supreme court of Colorado, referring to a question very similar to that here presented, said:

"The notes were given in consideration of the delivery of a tractor, to be of a certain standard of efficiency, failing which, the company was to repair defective parts or remedy deficiencies. That defects existed is not questioned, and that the company was attempting to carry out its contract to make repairs and remedy defects at the time of the renewal, is clearly shown. We think the court rightly held that renewal of the note did not preclude defendants. In a similar situation, and where our views are admirably expressed, the Georgia Court of Appeals said: 'We understand that where renewal notes are given under such circumstances as these, there is no implication of law that the parties are thereby attempting to adjust the past differences or to shut off defenses

arising out of past complaints, but that the transaction is to be understood merely as extending the time within which each of the parties is to perform his contract. To state it a little differently and more specifically, as applied to the case before us: The plaintiff's breach of warranty was not unconditionally consummated at the time the renewal note was given, for the reason that the warranty and the concurrent promise on the part of the plaintiff was not merely that there would be no defects, but that if there were defects the plaintiff would repair and remedy them. Until the plaintiff had had full and reasonable opportunity, according to the terms of the contract, of remedying any deficiencies, the breach was not complete, and did not give a cause of action or a defense to the defendants.' *McDaniel v. Mallary Brothers Machinery Co.*, 6 Ga. App. 848, 66 S. E. 146."

Respondent strongly relies upon a letter written by appellant October 22, 1930, in which appellant apparently stated his satisfaction with the performance of the tractor. This is a matter which may be considered when the case is again presented to the superior court. It has no bearing upon the question here to be determined.

When appellant executed the new notes in March, 1932, he was justified in relying upon the statements of respondent's agents that the tractor would function. He could not then try out the machine, as it was too early for his spring plowing, and without putting the tractor actually to work, no one could tell whether or not it would perform satisfactorily. That was a matter which necessarily must await an actual field test. That the tractor did not do its work when the time for the spring plowing arrived, appears beyond question, and respondent's officers admitted, in effect, that nothing more could be done short of sending the machine back to the factory.

There seems to be a logical distinction between the

effect of the execution of new notes, as was done here, in cases where the vendor is still seeking to remedy admitted defects in the appliance for which the original and new notes were given, and cases where the renewal notes were executed at a time when the vendor was not recognizing any obligation to make repairs. The case of *Bonded Adjustment Co. v. Anderson, supra,* is an illustration of the latter proposition, while the case of *Emerson-Brantingham Implement Co. v. Miller, supra,* illustrates the former situation.

In the case at bar, respondent, during the negotiations which led up to the execution of the new notes, by its acts, if not directly, admitted that the tractor was not functioning satisfactorily, and again attempted to remedy the defects. Respondent's good faith in attempting to make the tractor function is open to serious question, as it is difficult to believe that respondent's officers did not at that time well know that nothing save rebuilding the tractor would place it in condition to do the work which it should perform. In any event, it must be held that the repairs which respondent caused to be made, coupled with all the surrounding circumstances, amounted to a representation that the tractor could and would be made to function satisfactorily, and that respondent's agreement to make the tractor so function was a part of the accord of the parties.

As above stated, we hold that any accord to which the parties had agreed never ripened into a satisfaction, and that the entire matter of appellant's damages is still open for judicial determination.

After it was again demonstrated that the tractor was a failure, appellant was induced to accept tractor number two, which proved to be so far short of the representations made that appellant refused to accept

it, in which action he was amply justified. It may be noted in this connection that Mr. Kingston testified that he told appellant that the second tractor had come back to respondent because of the death of the first purchaser, the witness stating that this was his impression at the time he made the statement, but that he had later found that he was mistaken.

Appellant contends that the court erred in ruling that respondent's retention of the first tractor did not in law operate as a satisfaction of the notes which appellant had executed, secured by a mortgage on that tractor. Respondent did not take possession of the tractor against appellant's consent. The machine was voluntarily turned over to respondent by appellant, upon respondent's representation that the tractor which was to be substituted would do the work expected of it. Appellant, after examination of this tractor, refused to accept it, but that did not result in making the first tractor respondent's property. The trial court awarded to appellant

" . . . further damages against defendant in the amount of $250, or in the alternative of said amount, at the election of plaintiff, the delivery back to him, at defendant's home office in Portland, Oregon, of that certain tractor designated as Bates Model 45 Crawler Tractor, Serial No. 20853, Motor No. 217920, being the identical tractor referred to in plaintiff's first cause of action, plaintiff to make his said election on or before the 30th day of December, 1936."

By this portion of the judgment, appellant's right to the tractor was recognized. Appellant complains of the amount awarded to him in this connection—$250—contending that the tractor was of greater value. In its first formal memorandum opinion, the trial court estimated the value of this tractor at $1,050, stating, however, that this figure and others men-

tioned in the memorandum opinion were tentative. Later, the court filed a supplemental memorandum opinion, stating that appellant in his complaint alleged that, at the time of the exchange of tractors, the first tractor was worth $200, and that appellant testified that, at the time of the exchange, the first tractor was worth not more than $250. The court stated that, in the absence of testimony to the effect that the tractor was worth more than this sum, the complaint should not be deemed amended so as to support a higher valuation. Of course, if the tractor is of greater value than $250, appellant, under the judgment, might obtain the benefit of the difference by electing to take the machine.

As we conclude that the case should be sent back to the trial court for further proceeding which should terminate the entire controversy between the parties, and as we find in the record no element of estoppel operating against appellant as to the value of the first tractor at the time of the exchange, it is directed that, when the matter is again called for hearing, competent evidence may be received as to the value of the first tractor, its present whereabouts and condition, so that the rights of the parties may be finally determined.

 The trial court having erred in limiting appellant's damages to those which he suffered after March 5, 1932, and as we do not feel that this court should be called on to act as trier of the fact in connection with such damages, the judgment appealed from is vacated, and the cause remanded with instructions to determine the amount of damages which appellant should recover from the date he first began to use the first tractor. In furtherance of justice, the court should base its ultimate finding upon the evidence already taken and such other competent evidence as may be

offered by either party and received by the court; leave to reopen the case being hereby granted.

STEINERT, C. J., MAIN, HOLCOMB, and ROBINSON, JJ., concur.