[No. 27841. Department Two. June 10, 1940.]

S. J. Buob, *Respondent*, v. Feenaughty Machinery Company, *Appellant*.[1]

[1]Reported in 103 P. (2d) 325.

278

*Tustin & Chandler,* for appellant.

*Graves, Kizer & Graves,* for respondent.

STEINERT, J.—This cause is before us on appeal for the third time.

Plaintiff commenced the action on March 16, 1933, to recover damages alleged to have been sustained by

him in the years 1930, 1931, and 1932, as the result of misrepresentations and breach of warranty by defendant concerning a tractor which plaintiff had purchased from defendant in July, 1930. The cause was tried to the court, sitting without a jury, and on November 30, 1936, the court entered judgment for plaintiff in the gross amount of $2,500, subject, however, to certain credits, or offsets, totalling $2,241.53, thus reducing the amount of the judgment to $258.47. In arriving at that result, the trial court held that a certain agreement entered into by the parties on March 5, 1932, constituted an accord and satisfaction, and that plaintiff was therefore not entitled to recover for any damages sustained by him prior to that date.

Plaintiff appealed from the adverse portion of the judgment, and, upon appeal, this court held that the trial court had erred in limiting plaintiff's damages to those which he had suffered subsequent to the agreement of March 5, 1932. The judgment was accordingly vacated, and the cause was remanded with instructions to the trial court to determine, from the evidence already taken and from such additional competent evidence as thereafter might be received, the amount of damages which plaintiff should recover for the entire period, beginning with the date when he first began to use the tractor in 1930. *Buob v. Feenaughty Machinery Co.*, 191 Wash. 477, 71 P. (2d) 559.

Upon remand of the case to the superior court, additional testimony was taken, and, on April 16, 1938, judgment was entered in plaintiff's favor in the amount of $7,194.87. However, no findings of fact nor conclusions of law were made by the trial court, and upon appeal by defendant, the judgment was reversed, and the cause was remanded "with directions to the superior court to make findings of fact and conclusions

of law." *Buob v. Feenaughty Machinery Co.,* 199 Wash. 256, 90 P. (2d) 1024.

Thereafter, on remand, the superior court made findings of fact and conclusions of law upon the evidence theretofore taken, and on October 6, 1939, entered judgment in favor of plaintiff in the corrected amount of $7,189.70. From that judgment, defendant now appeals.

The facts underlying the controversy are sufficiently set forth in the opinion rendered upon the first appeal (191 Wash. 477, 71 P. (2d) 559) and will not be repeated here. Upon the present appeal, appellant, in its original brief, advances twenty-one assignments of error, and, in a supplemental brief, alleges the existence of two "accounting errors," and also raises a question relative to the award of interest on the judgment.

Introductory to its argument upon the errors assigned, appellant makes the claim that the additional testimony taken subsequent to the first appeal dictates a result different from that reached by this court in its first opinion; and, upon that ground, appellant vigorously contends that we should now, upon the pending appeal, reconsider the case as a whole. Respondent takes a contrary view. The rules applicable to the situation presented by appellant's initial contention may be stated as follows:

Questions which have been determined on appeal, or which might have been determined had they been presented, will not be considered by the appellate court upon a second appeal of the same action. *Dennis v. Kass & Co.,* 13 Wash. 137, 42 Pac. 540; *Smith v. Seattle,* 20 Wash. 613, 56 Pac. 389; *State v. Boyce,* 25 Wash. 422, 65 Pac. 763; *Wheeler v. Aberdeen,* 47 Wash. 405, 92 Pac. 135; *State ex rel. Nicomen Boom Co. v. North Shore Boom & Driving Co.,* 62 Wash. 436, 113 Pac. 1104; *Perrault v. Emporium Department Store Co.,* 83 Wash. 578, 145 Pac. 438; *Toadvine v. Northwest Trust & State*

*Bank,* 128 Wash. 611, 224 Pac. 22; *Buell v. Park Auto Transp. Co.,* 138 Wash. 678, 244 Pac. 992; *Morehouse v. Everett,* 141 Wash. 399, 252 Pac. 157, 58 A. L. R. 1482; *Cannon v. Seattle Title Trust Co.,* 145 Wash. 691, 261 Pac. 642; *Eyak River Packing Co. v. Parks,* 148 Wash. 495, 269 Pac. 807; *Fleming v. Buerkli,* 164 Wash. 136, 1 P. (2d) 915; 1 A. L. R. 725.

Conversely, the judgment on a former appeal does not become the "law of the case" as to such questions as were presented but were not decided and were not necessarily involved on that appeal.

■ An equally well settled rule is that, where the weight and sufficiency of the evidence have been passed upon in a former appeal, and the evidence at a second trial is substantially the same, the decision on the former appeal is decisive in a second appeal. *Olson v. Carlson,* 83 Wash. 415, 145 Pac. 237, L. R. A. 1915F, 13, L. R. A. 1916C, 803; *Perrault v. Emporium Department Store Co.,* 83 Wash. 578, 145 Pac. 438; *Fogarty v. Northern Pac. R. Co.,* 85 Wash. 90, 147 Pac. 652; *Mott Iron Works v. Metropolitan Bank,* 90 Wash. 655, 156 Pac. 864; *Ramat v. California Ins. Co.,* 104 Wash. 608, 177 Pac. 638; *Foy v. Pacific P. & L. Co.,* 110 Wash. 248, 188 Pac. 514.

The necessary corollary to this latter rule is that, when the evidence presented on the second appeal is materially different from that presented and passed upon in a former appeal, the decision in the prior appeal is not conclusive. 5 C. J. S. 1293, § 1834; 3 Am. Jur. 553, § 1000.

In applying these rules to the situation now before us, we must keep definitely in mind what was decided, and what was left open for decision, in the first appeal. Reference to the opinion on that appeal (*Buob v. Feenaughty Machinery Co.,* 191 Wash. 477, 71 P. (2d) 559), discloses that this court, in its decision, specifically

found that the tractor purchased by respondent was defective; that respondent was justified in refusing to accept a second tractor which was sent in June, 1932, in exchange for the first tractor; that appellant's agents grossly misrepresented both machines as to condition and previous use; and that the accord which the parties entered into by their agreement of March 5, 1932, never was executed, but remained executory. Basing its action upon those findings, this court vacated the judgment and remanded the cause for judicial determination of respondent's entire damages, also leaving open for further consideration by the trial court the effect of certain correspondence in which respondent had previously expressed satisfaction with the performance of the tractor. The evidence at the second trial, with reference to the specific points hereinabove stated, was substantially the same as that received in the first trial and, hence, those matters may not be reviewed upon this appeal.

We now take up, in numerical order, appellant's twenty-one assignments of error.

Number 1. This assignment attacks the entire judgment, and is, as appellant concedes, a composite of the remaining assignments, which attack the judgment in its component parts. No separate discussion of this assignment of error is therefore necessary.

Number 2. Appellant assigns error on the part of the court in failing to find that respondent was bound by the conditions of the warranty under which the first tractor was sold by appellant. The contract of purchase provided that, should the tractor fail to comply with the warranty included therein, "written notice by registered letter shall be given to said Feenaughty Machinery Co.," and that "in no case shall the machinery be returned after five days." Respondent did not comply with those requirements, and ap-

pellant now contends that respondent is therefore barred from recovery.

That question was presented to us on the first appeal in the brief of appellant (respondent there), and, although the opinion made no specific mention of the matter, it was necessarily involved in the decision by this court, for if respondent was barred from recovery by virtue of his failure to comply with the conditions relative to the warranty agreed upon in the contract, then, manifestly, the case would not, and could not, have been remanded for a determination of respondent's damages. The writer of the present opinion is unable to state categorically the ground upon which this court refused to give binding effect to the conditions specified in the contract. It may have been that the court was of the view that appellant's subsequent agreement to supply a second tractor in exchange for the first one constituted a waiver of the conditions of the warranty. But whether or not that was the specific reason, is immaterial. Nor is it material now whether that issue was correctly or incorrectly decided. The fact remains that the question was necessarily involved in the conclusion at which this court arrived on the first appeal, and hence cannot be considered now.

Number 3. Appellant next assigns as error the allowance to respondent of any damages whatsoever for the year 1930. This assignment relates to two items which are more specifically dealt with and disposed of in assignments 4 and 5. Appellant's immediate contention is based on three letters written by respondent to appellant subsequent to the 1930 harvesting season. In the first letter, written October 22, 1930, regarding a payment due from him, respondent stated that he had made a "good showing" with the tractor, thereby giving it "quite a boost" in that region of the

country, and further expressed a strong desire, despite his financial difficulties, to retain the machine. The other two letters, written in January, 1931, referred to refinancing plans relative to the tractor, but made no mention of any complaint that he might have had. Appellant's argument is that these letters prove conclusively that respondent was satisfied with the tractor, and that any claim for damages was foreign to his mind. At the trial, however, respondent testified that the reference to "a good showing," contained in the first letter, was inserted at the suggestion of one of appellant's agents, for the purpose of encouraging a satisfactory refinancing arrangement then under consideration by a third party.

The only effect of those letters was, of course, that of possible impeachment of respondent. That the trial court had those letters well in mind, is evidenced by the fact that it made specific and detailed reference to them in its memorandum decision at the conclusion of the first trial. It is to be noted, also, that, during the year 1930, to which those letters relate, respondent suffered damages in only a relatively small amount, due to an accident resulting from the faulty mechanism of the tractor. (See discussion of assignment of error number 5.) The principal damages, as found by the court, were sustained in 1931 and 1932, for crop losses, increased cost of harvesting, and loss of harvesting contracts, due to the same fault in the mechanism. It is true that, in arriving at its conclusions with respect to the losses sustained by respondent in 1930, the trial court relied largely upon respondent's own testimony, but, on the other hand, there was not a great deal of testimony to the contrary, upon that particular issue. After an examination of the record, we are unable to say that all the evidence, taken as a whole, upon the question of respondent's damages in 1930, as

hereinafter allowed, preponderates against the findings and decision of the trial court.

■ Number 4. Appellant further assigns as error the allowance to respondent of $477.90 as damages for five days' loss of time during 1930. This item forms the major part of respondent's claim for damages in 1930, which was discussed in the preceding assignment of error. As appellant points out, respondent had testified that, at the time in question, he had only one harvesting contract to finish, and that one was with a Mr. Edson. The trial court, however, found that respondent had "failed to establish by the greater weight of the evidence his inability to harvest the Edson crop on account of the defective condition of the tractor." Accordingly, it was error to grant any recovery for loss of time in that instance, there being no sufficient showing that injury resulted therefrom.

Respondent, however, contends that the fact of loss of time in the midst of the harvesting season is sufficient proof of injury. We cannot agree with that contention. Prospective profits, for which recovery is sought, must be proved with reasonable certainty. *Lockit Cap Co. v. Globe Mfg. Co.*, 158 Wash. 183, 290 Pac. 813. With respect to the item of damage here under consideration, respondent has not sustained the burden that was upon him.

The trial court having made a deduction of ten per cent for "unforeseen contingencies" in connection with a number of items, including this one, the net amount involved in this assignment of error is ninety per cent of $477.90, or $430.11, which latter amount should be deducted from the trial court's award.

■ Number 5. Appellant contends, next, that the trial court erred in allowing respondent damages in the sum of $75, the cost of a new combine wheel. This item is the remainder of the claim for damages in 1930, re-

ferred to in assignment of error number 3. The original wheel was broken in an accident occurring in 1930. It appears from the evidence that the accident occurred as a result of the tractor slipping out of gear. That the tractor was defective, in that it frequently slipped out of gear, was settled by the opinion in the first appeal. Although it appears that the accident occurred while a driver with but limited experience was operating the tractor, we cannot say that, because of that one fact, the evidence preponderates against the finding of the court that the injury was the proximate result of the defect in the tractor.

Number 6. Appellant next contends that the court erred in allowing respondent any damages for crop loss and increased cost of harvesting in 1931. The sole basis for this contention is appellant's claim that respondent could easily have mitigated those damages by hiring an extra man for thirty days, at a cost of three dollars per day, to sit beside the driver of the tractor and hold the mechanism in gear by manual effort.

On that point, the testimony upon which appellant relies went no further than to establish the fact that two men could sit side by side on the tractor seat, and that it was *possible* to hold the tractor in gear. Respondent, however, denied the practicability of that method of operation. The trial court not only heard all the evidence, but also viewed the machine at the place of its storage, at which time certain of the witnesses, while seated in the tractor, gave their testimony, accompanying it with a physical demonstration of the operation of the levers in front of them. In its memorandum opinion, the trial court expressly stated that it was

". . . apparent that the method of operation of the tractor suggested by counsel for the defendant [appellant], which they contend it was the duty of the plaintiff [respondent] to employ in mitigation of dam-

ages, would be . . . awkward and impractical .
. ."

The record appears to us to justify that conclusion.

■ Number 7. This assignment of error is based upon the allowance to plaintiff of damages for loss on harvesting contracts with one Pete Scott for the years 1931 and 1932. The net amount allowed by the court for this item was $436.59.

While the evidence tends to substantiate respondent's claim that he had a contract for the harvesting of Scott's 1931 pea crop, the evidence further shows that, when it was determined that respondent could not harvest the crop as he had agreed to, an exchange of work was effected, under which Scott mowed respondent's crop, and respondent, in return, threshed Scott's crop. Consequently, respondent's loss, if any, was only a partial one, and the trial court erred in allowing to respondent damages in the amount of the total profit that he might have made had he been able to harvest the Scott crop by straight combining. There is no evidence in the record upon which a reasonable computation of respondent's loss on this contract can be based, and hence respondent's claim with respect to the 1931 Pete Scott contract must fail for lack of proof.

As to the year 1932, the preponderance of the evidence is that there was no contract at all between Scott and respondent. Scott's own testimony establishes the fact that no definite understanding for that year was ever reached.

This item should not have been allowed.

Number 8. Error is assigned upon the allowance to respondent of damages in the amount of $212.40 for loss of contract, in 1931, with one Fitzgerald. The basis of this assignment is that the contract could have been performed by having an extra man on the tractor to hold it in gear while in operation. This contention is

disposed of by what we have said with respect to assignment Number 6.

■ Number 9. Error is next assigned upon the allowance to respondent of damages, in the net amount of $320.40, for loss of an alleged contract with one Clebert, in 1931. It is undisputed that the land and the crop in question on this item were the separate property of Clebert's wife. Mrs. Clebert testified that her husband, from whom she was divorced at the time of the trial, had no authority to enter into a contract for harvesting her crop; that she was averse to harvesting with a combine, the method employed by respondent, and preferred to have the harvesting done with mowers; that in 1931 her son had harvested her crop with mowing machines about a week before respondent had begun the use of his combine; and that under no consideration would she have entered into a contract with respondent.

We believe that the preponderance of the evidence is clearly with appellant upon the issues involved in this assignment of error, and that the court erred in allowing this item. The sum of $320.40 will therefore be deducted from the amount of the judgment.

■ Number 10. This assignment challenges the award of damages, amounting to $1,783.68, for respondent's crop loss and increased cost of harvesting in 1932. Under this heading, appellant first contends that the evidence shows that in 1932 respondent never had any intention of doing "straight combining," which was the method used by him in 1930 and 1931, and which required the use of a tractor. This contention is based upon the fact that the straight combining method also required the use of a special pea cutter bar and a special reel, neither of which respondent then had. Respondent, however, testified that the reason for his not having those appliances was that he

had no tractor. The reason for his not having a tractor for the season of 1932 was that, under the exchange agreement, respondent had returned the first tractor to appellant, and had refused to accept the second tractor sent in exchange because it did not comply with appellant's representations concerning it.

There is no evidence in the record that would justify a finding by this court that, had respondent had a tractor in 1932, he would still have been unable to procure the necessary cutter bar and reel, the cost of which amounted approximately to three hundred dollars. Since, however, he had no tractor, there was no occasion for him to procure, or have on hand, the additional appliances. Under that phase of the issue, the preponderance of the evidence appears to favor respondent.

Appellant next contends, under this assignment, that, because of respondent's refusal to try out the second tractor, he is not entitled to damages for this item. This contention is based on the argument that, by the use of the second tractor, respondent could have avoided any loss or damage. That question is foreclosed by the decision in the first appeal, wherein this court found that the second tractor was a badly worn machine and could not have been expected to function satisfactorily; that its condition and previous use had been grossly misrepresented by appellant's agents· and that respondent was justified in refusing to accept it.

Appellant further contends, under this assignment, that respondent subsequently procured a tractor from a third party, and that he could have successfully harvested his own crops and the crops of those persons with whom he had contracts by "laying out" the fields in such a way as to avoid pulling straight over steep hills. That tractor, however, was procured late in

July, 1932, and after much difficulty; furthermore, it was not of sufficient power to enable respondent to harvest the crops satisfactorily without loss of both time and returns upon the operation. The amount of damages for this particular item was for losses thus incurred, and in our opinion the finding of the trial court is supported by a preponderance of the evidence.

Number 11. Appellant next assigns error upon the allowance to respondent of damages, in the amount of $403.20, for loss of a harvesting contract with one Hollis in 1932. The facts upon this issue, as shown by a preponderance of the evidence, are that respondent originally had such a contract with Hollis, but was unable to perform it because, for the reasons heretofore given, he had no tractor. Respondent thereupon relinquished his contract to one Dilley, who harvested the crop, using a part of respondent's equipment, and who was paid in full by Hollis. Respondent's loss of the contract, and his consequent damages, were the result of appellant's failure to supply a tractor as agreed. The amount of this item was therefore properly allowed by the court.

Number 12. This assignment is based upon the failure of the court, in any event, to deduct $160 from the amount of damages allowed on the Hollis contract. This contention involves an offset which was not disputed, but which was apparently overlooked by the trial court in computing the damages. Respondent testified that, although he was unable to perform the contract in question, he had rented his "combine" to Dilley, who harvested Hollis' crop and had received a rental of $160 therefor. He admitted that an equivalent amount should be offset against his loss on the contract. The judgment should therefore be further reduced by that amount.

Number 13. The next assignment alleges

error in allowing respondent damages in the sum of $300 for overpayment on the purchase of the tractor. This amount was computed in the following manner: The sale price of the tractor was $3,450. Respondent paid thereon, in installments, the sum of $1,800. The court fixed the value of the tractor at the time of its delivery to respondent at $1,500. Thus, regardless of the sale price, the court found that the amount paid therefor exceeded the actual value by $300. Appellant contends that the valuation of $1,500 placed on the tractor was far too low.

While we are always loath to disagree with the trial court upon a finding of fact in a case where the evidence is in conflict, a careful examination of the record convinces us that, according to the preponderance of the evidence, the value of the tractor, at the time of its delivery to respondent, was at least $2,450. The only fault which respondent found with the machine was that it frequently slipped out of gear; that, however, did not prevent his using it continually, though with limited success, during the years 1930 and 1931. We do not believe that this defect reduced the value of the tractor more than one thousand dollars from its original purchase price. The judgment will therefore be further reduced by the amount of $950.

▮▮ Number 14. Next assigned as error is the action of the trial court in allowing respondent damages, amounting to $62.50, for transportation of the tractor. Under the exchange agreement referred to above, respondent was to ship the first tractor to Portland, Oregon, at his own expense, while appellant was to pay the cost of shipping the second tractor from Portland to the point where respondent was to receive it. The tractor sent in exchange failed to comply with appellant's representations, and respondent therefore refused to accept it. This court held, on the first ap-

peal, that respondent was justified in refusing acceptance. Since appellant breached its agreement with respect to the second tractor, the shipping cost of the first tractor was an additional loss to respondent, and hence was an allowable item.

■ Number 15. By the next assignment, appellant claims that the trial court erred in not holding respondent to his own "estimate" of damages prior to March 5, 1932. In the judgment now before us, the damages awarded respondent for the period prior to that date total $6,451.35. Appellant points out that respondent had testified at the first trial that, had the first tractor been put in a "proper state of repair" on March 5, 1932, or had the second tractor been as represented to him, he would have waived all damages now claimed by him to have been suffered prior to that date. Appellant accordingly contends that the damages claimed are fictitious, because, were they real, respondent would not have waived them.

The assignment is untenable, under the circumstances presented by this appeal. Appellant has attacked the judgment in each of its component parts. Each assignment of error is here reviewed, and is sustained or rejected on the basis of the testimony in support of the precise portion of the judgment at which the particular assignment is directed. In view of that fact, a "general" assignment of error, such as this one is, cannot be sustained.

■ Aside from that conclusion, however, the fact that respondent was willing to waive an undefined amount of damages does not necessarily compel a holding that his present claim is fictitious. His former estimate of the amount of damages suffered by him may have been considerably less than they actually were, and, besides, he could not know beforehand whether or

not his damages, though actual, would ultimately be allowed by a court in a hotly contested lawsuit.

Furthermore, an offer to compromise is not an admission of the invalidity of a claim.

"Compromises are favored in law, and the parties to a controversy who, in good faith, endeavor to adjust the same should not be penalized by having their praiseworthy efforts later used against them to their detriment." *Svea Fire & Life Ins. Co. v. Spokane P. & S. R. Co.*, 175 Wash. 622, 28 P. (2d) 266.

Respondent's testimony, in the respect just noted, undoubtedly was a proper subject for consideration by the court in determining the amount of damages, but it was not controlling. That the trial court did consider that testimony in connection with the more detailed evidence as to damages, is apparent from a full consideration of the record.

Number 16. Appellant next assigns error by the court in not holding that respondent's crop loss, if any, in 1931 was due to "unsatisfactory reel and cutter bar, and the rough condition of the ground." This contention is based on the fact that respondent's own testimony showed that in "straight combining," which was the method employed by respondent in harvesting peas when using a tractor, it was necessary to have a special sickle bar and "also a patent reel . . . to pick up the peas that lean away from the sickle bar;" and that the testimony further showed that a special reel which respondent had in 1931 was unsatisfactory and had to be returned to the vendor. From these facts, appellant reasons that the loss sustained cannot be attributed to the defective tractor. In other words, appellant contends that the inability on the part of respondent to harvest any portion of his farm by straight combining was due to the unsatisfactory nature, or to

the absence, of the necessary reel, rather than to any defect in the tractor.

That contention is refuted by the established fact that, on one hundred acres of respondent's land, which was level enough to permit use of the tractor, the straight combining method was used, and on that acreage, incidentally, no crop loss is claimed or allowed. The very witness whose testimony established the unsatisfactory nature of the special pea reel referred to by appellant, further testified that respondent had a regular wheat reel which could be, and by many farmers customarily was, used for harvesting peas. Consequently, the fact that the special pea reel was unsatisfactory did not mean that respondent was rendered unable to harvest by straight combining. On those portions of the farm where the tractor could be used, the straight combining method of harvesting was utilized, either with the "unsatisfactory" pea reel, or by substituting the regular wheat reel. Had the tractor not been so defective that it could not be used on the remaining land, there is nothing in the record to show that the remainder of respondent's farm could not likewise have been harvested by use of either the "unsatisfactory" reel, or of the wheat reel. As already stated, on the acreage harvested by straight combining, no crop loss is claimed.

Accordingly, the record lends full support to the finding by the trial court that respondent's inability to harvest three hundred sixty acres of uneven and rolling land on his farm was due to the defect in the tractor, and that such defect, consequently, was the proximate cause of respondent's being compelled to resort to the stationary thresher method at a time when the crop was too ripe for efficient harvesting by that method.

Number 17. Appellant next contends that the

trial court erred in not holding that respondent had suffered no crop loss in 1931. This contention is based on certain testimony to the effect that the yield on the farm of Pete Scott, referred to in assignment number 7, and who harvested by the use of mowers, was a very high one, while the yield on respondent's farm, harvested by the same method, and, as appellant contends, at the same time, was considerably lower. Appellant argues that, from these facts, it necessarily follows either that respondent's crop was not up to standard, or else that respondent was careless in the handling and cutting of his own crop.

We do not agree with the contention. The award of damages for crop loss was not predicated on the method of harvesting, as such, but upon the fact that, at the time of respondent's difficulties with the tractor, his crop was too ripe for efficient harvesting by the use of mowers and stationary threshers, the method to which he was finally forced to resort. While appellant argues that the testimony "conclusively shows" that respondent and Pete Scott were mowing their respective crops at the same time, we find no direct evidence to that effect. Appellant's argument is based entirely on the single, ambiguous statement by respondent to the effect that he was unable, in 1931, to perform his contract to harvest Pete Scott's peas "because he [Scott] seen we were getting nowheres, had this trouble, so he went out and hired . . . he cut the peas himself and hired them threshed." That the quoted statement does not contain the necessary inference contended for by appellant, seems to us to be too clear to require further discussion.

Appellant further argues, under this assignment, that there was no evidence of the amount of seed used by respondent in sowing his land, and that 1931 was respondent's first year in raising peas, from which

it concludes that his damages are purely speculative. However, respondent's damages were computed by the court, upon the evidence adduced, by comparing the yield of acres upon which he was able to use the tractor, with those upon which he was unable to do so. In our opinion, no error is shown under this assignment.

Number 18. Appellant assigns error in allowing respondent damages for 1931 and 1932, because respondent's testimony showed a lack of profits on the same land, under similar conditions, for the subsequent year, 1933. It is true that the yield for 1933 was high and the profits insignificant, but it does not follow therefrom that appellant's position is well taken. Respondent was not awarded damages for *profits,* under this item. He was awarded "crop loss." It is possible that, because of a combination of many factors, respondent may have sustained a net loss for 1933 even though his yield was high. That does not mean, however, that he is thereby barred from recovering actual losses for 1931 and 1932 which resulted from appellant's wrong in delivering a defective tractor. This assignment of error cannot be sustained.

Number 19. The next assignment is that the trial court erred in allowing respondent damages for extra cost of harvesting, by the stationary thresher method, three hundred sixty acres of peas in 1931. Appellant contends that this item of damages should have been limited to one hundred twenty acres. The contention is based upon the testimony of one of appellant's witnesses to the effect that respondent was equipped to harvest two hundred forty of the three hundred sixty acres by use of a "pickup attachment," rather than by the stationary thresher method. However, as stated in appellant's own brief, the "pickup attachment" is used only in conjunction with a tractor-

drawn combine. Appellant's contention, therefore, is contradicted by the established fact in this case that respondent was unable to use the tractor on the three hundred sixty acres in question. The evidence on this point was conflicting, to say the least, but, in any event, was sufficient to support the court's finding.

■ Number 20. This assignment alleges that the court erred in failing to find that respondent had suffered no crop loss in 1932. Respondent's evidence was to the effect that he had sustained a loss, in that year, of four bags per acre on two hundred forty acres. The trial court allowed, for this item, $1,754.60. Appellant contends that these damages were wholly speculative.

It is true that the amount could not be determined with mathematical exactitude, but it was reasonably established not only by comparison of respondent's yield with the yield, in general, of others whose farms were in the same vicinity and were subject to the same conditions of fertility, rainfall, seeding, method of farming, and harvesting as was respondent's, but also by comparison of the amount of wastage in 1932 with similar conditions in 1931, the loss by wastage in 1931 having been determined by comparison of the yield on the portion of respondent's farm where he was able to straight combine, with that on the portion of his farm where he was unable to do so. At least, we cannot say that the evidence preponderates against the finding of the court.

■ Number 21. Under this assignment, appellant contends that the court erred in failing to find that the cost of "straight combining," as testified to by respondent in fixing his damages, was too low. The evidence on this phase of the issue was in direct conflict. Appellant's sole witness on that subject testified that a dollar an acre was the usual profit on harvesting; he further testified that, from his own experience, the expense of

harvesting amounted to $34.50 a day. On the other hand, respondent testified that his expense of harvesting amounted to $18.75 a day, and that his profits amounted to $3.50 per acre. There was, manifestly, a wide spread in the variance of the testimony, and we have no way of determining the true figures except from the record itself. The trial court might have found either way. It chose to accept the testimony of respondent upon that subject, and we are unable to say that the evidence preponderates against the finding. The allowance will therefore stand.

 In addition to the assignments of error already discussed, appellant contends that the findings reflect two accounting errors. We believe that appellant's position is well taken. According to the court's findings, respondent's crop losses for 1931 and 1932, considered together, were estimated at a certain number of bags of peas, each weighing 145 pounds, and the value of the peas was fixed at two cents per pound upon the entire lot. The evidence, however, shows that the weight of the peas actually sold by respondent varied from 132⅖ pounds to 143⅓ pounds per bag, according to the lots in which they were delivered, and that the price received therefor varied from one and one-half to two and three-quarters cents per pound, according to the same lots. According, also, to the evidence, the gross weight of the peas was subject to a certain reduction for tare. No reduction for tare, however, was made by the trial court. Appellant contends that the use of arbitrary weight and price figures instead of the actual average weights and prices, plus the failure of the trial court to make any deduction for tare, resulted in errors, in respondent's favor, totalling $580.23.

Respondent "finds no fault" with appellant's computations, but insists that the items in question were compensated for by the allowance, by the trial court,

of an arbitrary deduction of ten per cent for "unforeseen contingencies." The memorandum opinion of the trial court at the conclusion of the original trial, however, states that the deduction for "unforeseen contingencies" was meant to compensate for such items as "delays due to breakages, weather conditions, or other unforeseen difficulties which would probably have reduced that estimated loss." It was clearly the intention of the trial court to make the ten per cent deduction from the damages computed on the basis of the amounts testified to at the trial. That computation was erroneous in the respects pointed out by appellant.

These combined errors resulted in allowing respondent $580.23 more than he should have been allowed for crop losses in 1931 and 1932. That amount will therefore be deducted from the judgment.

 Finally, appellant contends that the court erred in allowing interest from the date of the judgment entered April 16, 1938, which judgment was reversed by this court because of the absence of findings of fact and conclusions of law. We are of the view that appellant's position upon this question is also well grounded.

Upon the first appeal, the cause was remanded for judicial determination of respondent's entire damages. Until determined by the trial court, the amount of damages was unliquidated. Although determined by the trial court on the second hearing, there were neither findings nor conclusions, and until there were, the matter remained in the breast of the court. Consequently, the amount of damages never became liquidated until, upon the findings and conclusions, the court entered its third judgment, on October 6, 1939. Respondent, therefore, should have been allowed interest on the total amount of his damages, from October 6, 1939, together with his costs properly taxed.

The cause is remanded, with direction to the trial court to modify its judgment in accordance with this opinion.

BLAKE, C. J., BEALS, and JEFFERS, JJ., concur.