
IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| THE LAW OFFICE OF PAUL W. TAYLOR, INC., P.S., a Washington corporation, | ) ) ) ) | No. 69158-9-I |
| Respondent, | ) ) ) | |
| v. | ) ) | ORDER AMENDING CASE CAPTION |
| JOSEPH D. WOODMANSEE and KIMBERLY A. WOODMANSEE, husband and wife, | ) ) ) ) | |
| Appellants. | ) ) | |

The court on its own motion has determined that the case caption of the above-entitled opinion filed on August 26, 2013 be amended to correctly reflect the parties designations, and that The Law Office of Paul W. Taylor, Inc., P.S. shall be redesignated as the respondent, and Joseph and Kimberly Woodmansee shall be redesignated as the appellants.

Now, therefore, it is hereby

ORDERED that the case caption of the above-entitled opinion filed on August 26, 2013 be amended to correctly reflect the parties designations, and that The Law Office of Paul W. Taylor, Inc., P.S. shall be redesignated as the respondent, and Joseph and

Kimberly Woodmansee shall be redesignated as the appellants.

Done this 9th day of Sept. , 2013.

FOR THE COURT:

_____
Judge



IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| THE LAW OFFICE OF PAUL W. TAYLOR, INC., P.S., a Washington corporation, | ) ) ) ) | No. 69158-9-I |
| | ) | DIVISION ONE |
| Appellant, | ) ) | |
| v. | ) ) | UNPUBLISHED OPINION |
| JOSEPH D. WOODMANSEE and KIMBERLY A. WOODMANSEE, husband and wife, | ) ) ) ) ) | |
| Respondents. | ) | FILED: August 26, 2013 |

SCHINDLER, J. — Joseph D. Woodmansee and Kimberly A. Woodmansee (Woodmansee) appeal the order granting summary judgment on the claim of The Law Office of Paul W. Taylor, Inc., PS (Taylor) for breach of the settlement agreement. The settlement agreement required Woodmansee to pay Taylor $200,000 for attorney fees out of escrow after the closing date for the sale of certain property. Because Woodmansee did not pay Taylor after the scheduled closing occurred, we affirm.

FACTS

Joseph D. Woodmansee and Kimberly A. Woodmansee (Woodmansee) develop vacant land to sell for residential development. Woodmansee entered into a contract with home builder D.B. Johnson Construction, Inc., England Family, LLC (DBJC) to sell

developed lots at a predetermined price in Digby Heights, a housing development in Mount Vernon. DBJC refused to purchase the lots, claiming the lots did not conform to contract specifications. Woodmansee invoked the arbitration provision in the contract for specific performance and to obtain clarification of disputed terms of the contract.

The Law Office of Paul W. Taylor, Inc., PS (Taylor) agreed to represent Woodmansee in the arbitration. Woodmansee entered into a contingency fee agreement with Taylor. The fee agreement contained the following contingency fee provisions:

> In lieu of the foregoing payment schedule, the client shall pay a cash advance of $30,000. Of that amount, $25,000.00 shall constitute a non-refundable advance for attorney fees to be paid by Monday, July 19, 2010 and $5,000.00 for costs to be paid within thirty days. The latter amount to be guaranteed to be replenished and maintained at $5,000.00 as needed for deposition and other arbitration and other related costs. If that condition is not met, attorney will withdraw.
> Attorney will defer payment of the remainder of its fees and take that amount as a contingent fee of 33% of the total amount recovered upon settlement or arbitration provided attorney is paid within 30 days following settlement or arbitration decision. This amount will be due and owing regardless of the timing of any settlement agreement. The client will agree not to contest fees. If collection efforts must be taken to obtain payment of award then the contingent fee increases to 40%.

The arbitration began in November 2010. In November 2011, the panel ruled that Woodmansee's tender of the property was deficient "to some degree" but did not constitute a material breach of the agreement.

> We agree that the tender was, to some degree, deficient but do not agree that the deficiencies constituted the failure of a condition precedent or a material breach. Both parties have submitted evidence of the estimated cost to cure these deficiencies. We decline to require DBJC to accept the lots as tendered or specify an amount of credit to DBJC for the cost to cure. As follows in paragraph 7 hereof, the Contract remains in effect until October 24, 2011 and Woodmansee is free to tender these same lots (provided all of the deficiencies are cured), or to tender other conforming

lots, pursuant to the provisions of Paragraphs 11 and 12 of the Exclusive Purchase Agreement.

The arbitration award required DBJC to purchase up to 150 lots by October 24, 2011, resulting in net proceeds to Woodmansee of approximately $10.5 million.

Woodmansee refused to pay attorney fees to Taylor. Woodmansee took the position that because no damages were awarded in the arbitration, Taylor was not entitled to attorney fees under the contingency fee agreement. Taylor asserted he was entitled to payment of attorney fees because the fee agreement expressly states that he is entitled to "33% of the total amount recovered upon settlement or arbitration." Taylor attempted to negotiate an agreement with Woodmansee to pay the fees owed but Woodmansee refused to negotiate.

Despite repeated demands, Taylor received no payment for attorney fees. Nonetheless, Taylor continued to represent Woodmansee in additional disputes with DBJC over interpretation of the contract. Following another arbitration hearing, the panel issued a supplemental award for the sale of 71 lots in Digby Heights. The closing date for the 71 lots was scheduled for March 22, 2011.

On March 17, 2011, Taylor filed a lawsuit against Woodmansee. Taylor alleged breach of the contingency fee agreement, quantum merit, and a claim for an attorney fee lien. Taylor served DBJC and the escrow company handling the closing scheduled for March 22 with a notice of the attorney fee lien. The sale closed on March 22 and the lots sold for $4,699,791.

On May 26, Taylor and Woodmansee engaged in mediation and entered into a settlement agreement for payment of attorney fees. Woodmansee agreed to pay Taylor $200,000 out of the proceeds of another sale in Digby Heights that was scheduled to

close on October 24, 2011.

On October 21, 2011, an arbitration panel decided that 10 non-conforming lots would be excluded from the closing scheduled for October 24. The sale closed on October 24. The day after the closing, Woodmansee informed Taylor that there were insufficient funds available to pay his fees.

On November 18, Taylor filed an amended complaint alleging Woodmansee breached the settlement agreement reached at mediation. Taylor filed a motion for summary judgment on the claim for breach of the settlement agreement. The court granted Taylor's motion for summary judgment. Woodmansee appeals.

## ANALYSIS

Woodmansee contends the settlement agreement is unenforceable because the agreement expressly states that the deadline for payment of the fees was October 24, 2011, and the agreement became null and void after that date. Taylor contends that under the plain language of the settlement agreement, the payment of attorney fees was contingent on the sale of the lots on October 24, 2011, and Woodmansee breached the agreement by refusing to pay the amount owed out of escrow. We agree with Taylor.

A contract "should be construed as a whole and, if reasonably possible, in a way that effectuates all of its provisions." Colorado Structures, Inc. v. Ins. Co. of the West, 161 Wn.2d 577, 588, 167 P.3d 1125 (2007).[1] Courts construe agreements to give effect to every word so as not to render any word superfluous. Nishikawa v. U.S. Eagle High, LLC, 138 Wn. App. 841, 849, 158 P.3d 1265 (2001).

---

[1] (Footnotes omitted.)

4

Here, the settlement agreement provided, in pertinent part:

1. Defendants Joseph and Kimberly Woodmansee will pay Plaintiff $200,000 at the closing of the sale of Digby Heights to D.B. Johnson Construction, Inc., England Family, LLC, and/or any other Johnson-owned company, entity, principal, alter ego, or individual (hereinafter "Johnson"). Plaintiff shall be paid directly out of closing through escrow. Defendants shall also reimburse Plaintiff $571.74 for unpaid costs within 10 days after release of Plaintiff's lien;

2. This agreement is binding on all parties until the October 24, 2011 closing date, or, if the arbitrators extend the closing date, until December 30, 2011, but no later than that date even if the arbitrators extend the closing date beyond December 30, 2011. At the expiration of the October 24, 2011 closing date, or if applicable, December 30, 2011, Plaintiff alone may agree to extend the deadline for closing and payment of $200,000. If applicable deadline expires and Plaintiff does not give written notice to extend the deadline, this Agreement is null and void and of no effect. At that point the parties shall retain all rights that they had against one another.

The settlement agreement further provided:

> B.4. Agreement Contingent on Sale of Real Property.
> This settlement agreement is contingent on the future sale of lots in a development known as Digby Heights, the property at the center of the AAA arbitration dispute in which Taylor represented the Woodmansees. The Woodmansees shall pay Taylor Two Hundred Thousand Dollars ($200,000.00) directly out of escrow at the closing of the sale of lots in Digby Heights to D.B. Johnson Construction, Inc., England Family, LLC. Woodmansees' counsel shall also disclose immediately in writing to Mr. Taylor any significant change in the status of the Woodmansee/Johnson Digby lot transaction and notify Plaintiff of any change in status that would affect the payment herein.
> B.5. Agreement Binding and Dates of Termination if Agreed Payment Not Paid.
> The agreement is binding on all parties until the October 24, 2011 closing date, or, if the AAA arbitrators extend the closing date, until December 30, 2011, but no later than that date even if the arbitrators extend the closing date beyond December 30, 2011.
> The deadline for closing and payment of Two Hundred Thousand Dollars ($200,000.00) out of escrow shall not be extended unless it is specifically extended in writing in Taylor's sole discretion. If the applicable deadline expires, and Taylor does not give written notice to extend the deadline, then this agreement is null and void and of no effect. At that point the parties shall retain all rights that they had against one another.

5

Woodmansee argues that the language, "binding on all parties until the October 24, 2011 closing date," and "[i]f the applicable deadline expires . . . then this agreement is null and void and of no effect," means that there was no obligation to pay Taylor after the October 24 closing date.

But Woodmansee's argument ignores the unambiguous language that "[t]his settlement agreement is contingent on the future sale of lots in a development known as Digby Heights. . . . The Woodmansees shall pay Taylor Two Hundred Thousand Dollars ($200,000.00) directly out of escrow at the closing."[2] Under the plain language of the agreement, the sale of lots triggered the obligation to pay the attorney fees from escrow. Because the closing did in fact occur by the deadline, under the express terms of the agreement, Woodmansee had an obligation to pay the $200,000 in attorney fees to Taylor. To construe the agreement otherwise would mean that Woodmansee could simply breach the agreement by refusing to pay at the time of closing, and then claim the agreement expired and there was no obligation to pay.

Woodmansee also argues that because the settlement agreement was an executory contract, Taylor could not enforce the settlement agreement. But as Taylor contends, the fact that the settlement agreement was executory does not prevent the non-breaching party from enforcing it. In an executory contract, the original claim is suspended pending performance of the compromise agreement. Rosen v. Ascentry Techs., Inc., 143 Wn. App. 364, 369-70, 177 P.3d 765 (2008). The non-breaching party

---

[2] The settlement agreement also specifically refers to "[t]he deadline for closing and payment."

6

has the choice of either enforcing the settlement agreement or enforcing the original

claim:

> "[W]ith an executory accord, pending full performance of the accord – the compromise agreement – the original claim is merely suspended. It is not discharged until the promised performance is complete. Breach of the accord empowers the claimant with the choice of enforcing the accord or the original claim."

Rosen, 143 Wn. App. at 369-70 (quoting 13 SARAH HOWARD JENKINS, CORBIN ON

CONTRACTS § 69.1, at 278 (rev. ed. 2003)). As our supreme court has recognized, "The

law is clear. When the debtor breaches the accord, the creditor can choose whether to

sue." Crawford v. Allen, 66 Wn.2d 693, 695, 404 P.2d 767 (1965). Here, Taylor chose

to sue after Woodmansee breached the settlement agreement.

Woodmansee also contends that Taylor was judicially estopped from claiming

that the agreement was enforceable by taking the inconsistent position that the

agreement was void in the motion to lift the stay.

To determine whether to apply the doctrine of judicial estoppel, a trial court

considers three factors:

> (1) whether the party's later position is clearly inconsistent with its earlier position, (2) whether acceptance of the later inconsistent position would create the perception that either the first or second court was misled, and (3) whether the assertion of the inconsistent position would create an unfair advantage for the asserting party or an unfair detriment to the opposing party.

Anfinson v. FedEx Ground Package Sys., Inc., 174 Wn.2d 851, 861-62, 281 P.3d 289

(2012).[3]

---

[3] (Citations and internal quotation marks omitted.)

Here, the settlement agreement provided that until closing of the sale of the lots, or expiration if there was no closing, all court proceedings would be stayed.

> The pending action will be dismissed with prejudice and without costs once closing, payment, and execution of the release and other settlement documents have occurred. Until that time, or when this Agreement expires, all proceedings shall be stayed. Plaintiff shall immediately release all liens on the applicable projects.

On November 4, 2011, Taylor filed a motion to lift the stay and a motion to amend the complaint. Taylor sought to lift the stay because it was unclear whether the stay was lifted once the breach occurred.

> Plaintiff moves the Court for an order lifting the Stay entered nunc pro tunc to June 1, 2011 pursuant to Stipulation and Order submitted by the parties because the Defendants have failed to make the payment as they had agreed to by October 24, 2011 pursuant to a Settlement Agreement executed by the parties.
>
> . . . .
> . . . Because the order entered does not clearly state the stay [is] automatically lifted if payment is not made on October 24, 2011, or the Settlement Agreement is extended in writing by Plaintiff, in Plaintiff's sole discretion, this motion is deemed necessary.

In response, Woodmansee argued that the stay should remain in effect and the parties should be ordered back to mediation. In the reply, Taylor addressed Woodmansee's contention that he refused to return to mediation:

> By the terms of the Settlement Agreement, which incorporates the Settlement Memo by reference, the Settlement Agreement is null and void if the Settlement Agreement is not extended in writing by the Plaintiff in the Plaintiff's sole discretion. As of November 2, 2011, the date of expiration of the Second Extension, the Settlement Agreement was terminated. The only reason Plaintiff filed a Motion to Lift the Stay [is] because the language in the second paragraph of the Order for Stay that should have included the October 24, 2011 date was in error. Just because the Settlement Agreement has terminated does not in any way mean that the Parties cannot return to mediation; it only means that the Parties would have to mutually agree to return to mediation. Without additional

8

consideration being paid to extend the stay or other good reason or benefit to return to mediation, Plaintiff has no reason to continue to mediate an agreement that was breached by WOODMANSEE.

In context, Taylor did not take an inconsistent position as to the validity and enforceability of the agreement. The settlement agreement states that it "is binding on all parties until the October 24, 2011 closing date," unless Taylor agreed to an extension. Taylor argued that because he did not agree to an extension of the settlement agreement, and without additional consideration or good cause, there was no reason to return to mediation.

We affirm. Under the terms of the settlement agreement and upon compliance with RAP 18.1, Taylor is entitled to attorney fees and costs on appeal.[4]

WE CONCUR:

---

[4] The settlement agreement provides for attorney fees as follows:

In the event it is necessary for any party hereto, or its authorized representative, successor or assign to institute suit in connection with this Agreement or the breach thereof, venue shall be in the Skagit County Superior Court, and the prevailing party in such suit or proceeding shall be entitled to reimbursement for its reasonable costs, expenses and attorney fees incurred.