IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

ADAM STITES,                            )
                                        )      No.  41174-5-III
                    Respondent,         )
                                        )
        v.                              )
                                        )
CLAYTON JACK MONTGOMERY, and            )      UNPUBLISHED OPINION
NUTRA PURE, LLC, a Washington           )
Limited Liability Company;              )
                                        )
                    Appellants.         )
                                        )
_____ )
                                        )
CLAYTON JACK MONTGOMERY, an             )
individual,                             )
                                        )
                    Third-Party         )
Appellate,                              )
                                        )
        v.                              )
                                        )
ADAM STITES, KATIE STITES, and          )
their marital community;                )
                                        )
                    Third-Party         )
                    Respondents.        )

COONEY, J. — A stock purchase agreement (Agreement) was entered into between Adam Stites and Clayton Montgomery,[1] for the sale of Mirth Provisions, LLC, from Mr. Stites to Mr. Montgomery. The Agreement required Mr. Montgomery to make 24 monthly payments to Mr. Stites, among other provisions. After the sale, NACM CS, a collection agency, sued Mirth Provisions, LLC, on a debt assigned to it by Ross Printing and Packaging (Ross Printing). The Ross Printing debt was actually incurred and owed by Mirth Provisions, Inc., not Mirth Provisions, LLC. Neither Mr. Montgomery nor Mirth Provisions, LLC, responded to or defended the lawsuit, resulting in a default judgment and subsequent garnishment of Mirth Provisions, LLC's bank account. Mr. Montgomery faulted Mr. Stites for failing to disclose the Ross Printing debt, per the terms of the Agreement, and ceased making monthly payments to him.

As a result, Mr. Stites sued Mr. Montgomery for breach of contract. Mr. Montgomery answered the complaint, asserted counterclaims against Mr. Stites and his wife, Katie Stites, as a "Third-Party Defendant." Clerk's Papers (CP) at 373-80. The parties arbitrated the dispute. After arbitration, Mr. Montgomery requested a trial de novo. The Stites then moved for summary judgment, requesting the court enter judgment

---

[1] Mr. Montgomery purchased Mirth Provisions, LLC, on behalf of Nutra Pure, LLC. For the sake of clarity, we refer to the Nutra Pure, LLC, and Mr. Montgomery as "Mr. Montgomery."

in favor of Mr. Stites on his breach of contract claim, dismiss Mr. Montgomery's counterclaims against Mr. Stites, and dismiss Ms. Stites as a third-party defendant. Following the Stites' motion for summary judgment and competing motions for reconsideration, the trial court entered judgment in favor of Mr. Stites on his breach of contract claim, dismissed Mr. Montgomery's counterclaims, and dismissed Ms. Stites as a third-party defendant.

Mr. Montgomery appeals. We affirm.

BACKGROUND

In 2013, Mr. Stites founded Mirth Provisions, LLC, a beverage company focused solely on the Washington State market. In 2016, Mr. Stites, along with 11 other individuals, incorporated Mirth Provisions, Inc., a beverage company intended to operate nationally. Although the two entities shared similar names, they are separate entities.

In April 2022, Mr. Stites and Mr. Montgomery entered into an Agreement for the sale of Mirth Provisions, LLC, to Mr. Montgomery. Under the Agreement, Mr. Montgomery was obligated to pay Mr. Stites $35,000 at closing, with the balance of $74,304 being paid at a rate of $3,096 per month for 24 months. The Agreement included a "Seller's Representations and Indemnification" provision:

> Seller further represents and warrants that (a) it has the exclusive authority to enter into this transaction and transfer [Mirth Provisions, LLC] Assets, free of the claims of any third parties . . . [Mirth Provisions, LLC] Assets are free and clear of all liens, charges, claims and encumbrances; except as disclosed herein, and

3

(c) Seller is not aware of any pending or threatened legal or regulatory action related to [Mirth Provision, LLC] Assets . . . Seller will indemnify and hold harmless the Buyer from any and all claims, expenses, costs, or fees (including reasonable attorney fees and costs) arising from or related to . . . any breach of Seller's representations and warranties contained herein.

CP at 30-31.

After the sale, NACM CS sued Mirth Provisions, LLC, on a debt assigned to it by Ross Printing. Mr. Stites learned of the lawsuit and informed Mr. Montgomery that the debt belonged to Mirth Provisions, Inc., not Mirth Provisions, LLC. Neither Mr. Montgomery nor Mirth Provisions, LLC, appeared, answered, or otherwise defended the lawsuit, resulting in a default judgment entered against Mirth Provisions, LLC. NACM CS then obtained a writ of garnishment, leading to a garnishment of Mirth Provisions, LLC's bank account in the amount of $17,188.66.

After the garnishment, Mr. Montgomery admittedly stopped issuing the $3,096.00 monthly payments to Mr. Stites, leaving a balance owing of $49,536.00. Mr. Montgomery claimed that "due to the funds being frozen from the garnishment . . . I informed [Mr.] Stites payments would resume in July 2023 once the amount garnished was offset by the payments." CP at 161.

Mr. Stites sued Mr. Montgomery for breach of contract. Mr. Montgomery answered the complaint, asserted affirmative defenses, and brought counterclaims against Mr. Stites and Ms. Stites as a "Third-Party Defendant." CP at 376. In his counterclaim,

Mr. Montgomery brought claims for breach of contract, unjust enrichment, negligent misrepresentation, intentional misrepresentation, and recission.

The parties' dispute was arbitrated. Thereafter, Mr. Montgomery moved to seal the arbitration award and requested a trial de novo. The Stites then moved for summary judgment, requesting the court:

1. Grant summary judgment in favor of Plaintiff Adam Stites for his causes of action as Plaintiff, against Defendants Clayton Montgomery and Nutra Pure, LLC.

2. Grant summary judgment in favor of Katie Stites as Third-Party Defendant whereby dismissing Clayton Montgomery's Third-Party complaint against Mrs. Stites.

3. Grant attorney fees to Mrs. Stites for having to defend the frivolous third-party complaint brought by Mr. Montgomery.

4. To the extent that any causes of action were made against Mr. Stites as a Counter-Defendant, grant summary judgment in favor of Mr. Stites whereby dismissing all counter-claims against Mr. Stites.

CP at 2. In their motion, the Stites asserted Mr. Montgomery had materially breached the Agreement by suspending his monthly payments and the causes of actions brought against Ms. Stites were "meritless and designed to harass Mrs. Stites." CP at 15. In support of their motion, Mr. Stites filed a declaration in which he claimed the Ross Printing debt was incurred and owed by Mirth Provisions, Inc., not Mirth Provisions, LLC. Mr. Stites declared that NACM CS "sued the wrong debtor" as he was "the person who issued the purchase orders from [Mirth Provisions, Inc.] to Ross Printing," and "the purchase orders and the Ross Printing invoices all show the debt was incurred by [Mirth

Provisions, Inc.] and owed by [Mirth Provisions, Inc.]." CP at 25-26. Mr. Stites

explained he "learned of the lawsuit and then informed Mr. Montgomery that the debt did

not belong to Mirth Provisions, LLC, but rather, the debt belonged to Mirth Provisions,

Inc." CP at 25.

In response, Mr. Montgomery filed a declaration explaining, "On April 26, 2023,

I asked for further direction on how to proceed on the garnishment issue as the debt was

not disclosed by [Mr.] Stites in the [Agreement] and therefore I was not required to

defend the lawsuit pursuant to the [Agreement]." CP at 161. Mr. Montgomery claimed,

"[Mr.] Stites failed to indemnify me and defend the lawsuit," which resulted in default

judgment against Mirth Provisions, LLC. CP at 161. Mr. Montgomery further asserted

that Mr. Stites informed him the invoices were issued by Mirth Provisions, Inc., after the

judgment was entered. Mr. Montgomery attached an e-mail thread between he and Mr.

Stites to his declaration in which he wrote, "As it stands, my plan was to simply offset

basically 6 of the 24 monthly payments, with partial payment due to you after July, then

reverts back to the regular $3,096 payments for the remainder of the term." CP at 188.

Following a hearing on the Stites' motion, the court (1) denied Mr. Stites' motion

on his breach of contract claim, (2) granted Ms. Stites' motion to dismiss her as a

third-party defendant, (3) denied Ms. Stites' request for an award of attorney fees, and

(4) denied Mr. Stites' motion to dismiss Mr. Montgomery's counterclaims. Both parties

filed motions for reconsideration. The court granted Mr. Stites' motion on his breach of contract claim and denied Mr. Montgomery's motion. [2]

Mr. Montgomery timely appeals.

ANALYSIS

SUMMARY JUDGMENT

Mr. Montgomery contends the trial court erred in granting the Stites' motion for summary judgment. We disagree.

We review orders on summary judgment de novo. *Keck v. Collins*, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). Summary judgment is only appropriate if there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. *Id.*; CR 56(c). The moving party bears the initial burden of establishing that there are no disputed issues of material fact. *Young v. Key Pharms., Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989). "A material fact is one upon which the outcome of the litigation depends in whole or in part." *Atherton Condo. Apartment-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co.*, 115 Wn.2d 506, 516, 799 P.2d 250 (1990).

---

[2] The court also denied "Mr. Stites' request for attorney fees based on the community property counterclaims." CP at 307. The Stites filed a "Motion to Revise" the court's order on reconsideration, noting that Ms. Stites requested attorney fees pursuant to RCW 4.48.15, the frivolous claim statute, and contended that there were not counterclaims against Ms. Stites because she was a third-party defendant. CP at 319. The court entered an "Order Correcting Scrivener Error Per CR 60(a) & Clarification." CP at 324 (some capitalization omitted).

In deciding a motion for summary judgment, the evidence is considered in a light most favorable to the nonmoving party. *Keck*, 184 Wn.2d at 370. If the moving party satisfies its burden, then the burden shifts to the nonmoving party to establish there is a genuine issue for the trier of fact. *Young*, 112 Wn.2d at 225-26. While questions of fact typically are left to the trial process, they may be treated as a matter of law if "reasonable minds could reach but one conclusion." *Hartley v. State*, 103 Wn.2d 768, 775, 698 P.2d 77 (1985).

A nonmoving party may not rely on speculation or having its own affidavits accepted at face value. *Seven Gables Corp. v. MGM/UA Entm't Co.*, 106 Wn.2d 1, 13, 721 P.2d 1 (1986). Instead, a nonmoving party must put "forth specific facts that sufficiently rebut the moving party's contentions and disclose that a genuine issue as to a material fact exists." *Id.*

Mr. Montgomery contends the court erred in granting Mr. Stites' motion for summary judgment. Mr. Montgomery argues he was not in breach of the Agreement because Mr. Stites first materially breached the Agreement by failing to disclose the Ross Printing debt. Mr. Montgomery further contends that Mr. Stites breached the Agreement by failing to indemnify and defend Mirth Provisions, LLC, against NACM CS's lawsuit. Thus, Mr. Montgomery contends he was relieved from performing under the Agreement. Lastly, Mr. Montgomery claims that even if the debt was not owed by Mirth Provisions,

LLC, Mr. Stites was still in breach of the Agreement by failing to defend and indemnify him from claims arising out of undisclosed debts.

"A breach of contract is actionable only if the contract imposes a duty, the duty is breached, and the breach proximately causes damage to the [plaintiff]." *Nw. Indep. Forest Mfrs. v. Dep't of Lab. & Indus.*, 78 Wn. App. 707, 712, 899 P.2d 6 (1995). A party is barred from enforcing a contract if that party materially breached the contract. *Rosen v. Ascentry Techs., Inc.*, 143 Wn. App. 364, 369, 177 P.3d 765 (2008).

Under the Agreement, Mr. Stites warranted that Mirth Provisions, LLC, was being sold "free and clear of all liens, charges, claims and encumbrances." CP at 31. Mr. Stites claimed he was "not aware of any pending or threatened legal or regulatory action related to [Mirth Provisions, LLC]," and agreed to "indemnify and hold harmless [Mr. Montgomery] from any and all claims, expenses, costs or fees (including reasonable attorney fees and costs) arising from or related to . . . any breach of [his] representations and warranties." CP at 31.

In support of the Stites' motion for summary judgment, Mr. Stites declared that he prepared purchase orders for Ross Printing on behalf of Mirth Provisions, Inc., and that the Ross Printing debt was incurred and owed by Mirth Provisions, Inc., not Mirth Provisions, LLC. Mr. Stites attached the purchase orders to his declaration. Mr. Stites further provided evidence that he sent Mr. Montgomery a message on November 30, 2022, over one month before the default judgment was entered, stating that the purchase

9

order "was issued from [Mirth Provisions, Inc.] to Ross and [Mirth Provisions, LLC] has no contractual relationship with Ross." CP at 203.

In response to the Stites' motion, Mr. Montgomery did not offer any evidence rebutting Mr. Stites' assertion that the Ross Printing debt was incurred and owed by Mirth Provisions, Inc. In a declaration filed in response to the Stites' motion, Mr. Montgomery acknowledged that he "stopped payments to Stites on the [Agreement] in February 2023 due to the funds being frozen from the garnishment." CP at 161. Mr. Montgomery argued Mr. Stites was in material breach of the Agreement "[a]s a result of [his] failure to disclose the debt and further failure to indemnify and defend." CP at 151. On appeal, Mr. Montgomery claims Mr. Stites had a duty under the terms of the Agreement to indemnify him regardless of which entity incurred or owed the debt.

Because the Stites met their initial burden of establishing the absence of any disputed issues of material fact and Mr. Montgomery, as the nonmoving party, failed to establish there is a genuine issue for the trier of fact, we affirm the trial court's order.

Mr. Stites asserted in the Agreement that he was not aware of any pending or threatened legal action related to Mirth Provision, LLC, and would indemnify Mr. Montgomery from any claims arising out of or related to any breach of the Agreement. Consequently, before Mr. Stites' duty to indemnify Mr. Montgomery is triggered, Mr. Stites must be in breach of the representations and warranties made in the Agreement.

10

Here, it is undisputed that the Ross Printing debt was owed by Mirth Provisions, Inc. Because Mr. Stites was required to only disclose "claims, expenses, costs or fees" associated with Mirth Provisions, LLC, his failure to disclose the Ross Printing debt incurred and owed by Mirth Provisions, Inc., does not amount to a breach of the Agreement. CP at 31. Mr. Montgomery's obligation to perform under the Agreement was not discharged when he admittedly ceased paying monthly payments to Mr. Stites. Consequently, there is no disputed issue of material fact as to Mr. Montgomery's breach of the Agreement. The trial court did not err in granting summary judgment in favor of Mr. Stites on his breach of contract claim.

Mr. Montgomery next contends the Agreement required Mr. Stites to both defend and indemnify him. "[T]he duty to defend is different from and broader than the duty to indemnify." *Am. Best Food, Inc. v. Alea London, Ltd.*, 168 Wn.2d 398, 404, 229 P.3d 693 (2010). Contrary to Mr. Montgomery's argument that Mr. Stites had a duty to defend, the Agreement contains no such language. Thus, Mr. Stites was not required to defend Mr. Montgomery against claims arising under the Agreement.

DISMISSAL OF MR. MONTGOMERY'S THIRD-PARTY CLAIMS AGAINST MS. STITES

Mr. Montgomery argues the court erred in dismissing his third-party claims against Ms. Stites. We disagree. Because Mr. Stites' motion for summary judgment was properly granted as to Mr. Stites' breach of contract claim, Mr. Montgomery's counterclaims against Ms. Stites necessarily fail.

ATTORNEY FEES

The Stites request attorney fees and costs on appeal pursuant to RAP 18.1(a).  The Stites argue the Agreement provides for an award of attorney fees and costs and that Mr. Montgomery's request for a trial de novo after arbitration triggered an award of costs and fees under SCCAR 7.3.

Under RAP 18.1(a), a party is entitled to recover reasonable attorney fees on appeal where the applicable law grants the party a right to recover fees.  The Agreement states that if any payment is missed, Mr. Montgomery, as the borrower, "promises to pay all costs of collection, including reasonable attorney fees, whether or not a lawsuit is commenced."  CP at 36.  Based on the conclusion that Mr. Montgomery failed to make payments as required under the terms of the Agreement, Mr. Stites is entitled to his reasonable attorney fees and costs.

Mr. Stites is also entitled to an award of reasonable attorney fees and costs under SCCAR 7.3.  The mandatory arbitration rules provide, "The court shall assess costs and reasonable attorney fees against a party who appeals the award and fails to improve the party's position on the trial de novo."  SCCAR 7.3.  Mr. Montgomery did not improve his position, therefore the Stites are entitled to attorney fees under SCCAR 7.3.  *See, e.g.*, *Butler v. Finnegan*, 22 Wn. App. 2d 763, 771-72, 516 P.3d 395 (2022).

We award attorney fees and costs to the Stites on appeal in an amount to be determined by the court commissioner.

12

No. 41174-5-III
*Stites v. Montgomery*


Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Cooney, J.

WE CONCUR:

_____
Lawrence-Berrey, C.J.


_____
Murphy, J.